U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

PHYLLIS M. DAVIS
   Plaintiff,              Case no. 22-10234 -cv

v.

DEPARTMENT OF VETERAN AFFAIRS
AND EARL LEE
   Defendants.
_____/

COMPLAINT AND JURY DEMAND

  NOW COMES the Plaintiff, Phyllis M. Davis, by and through her attorney, Ernest L. Jarrett, and for good cause, states as her complaint, as follows:

PARTIES AND JURISDICTION

  1. The Plaintiff, Phyllis M. Davis, is an employee of the United States Department of Veteran Affairs, working from the John D. Dingell V.A. Medical Center in Detroit, Michgian.

  2. The Department of Veteran Affairs is an agency of the United States Government which, *inter alia*, provides medical and health care services to veterans of one or more military branches.

  3. Earl Lee is a Supervisor in the Human Resources Department. Although he works primarily from Cleveland, Ohio, his supervisory scope is over Human Resources employees, in Detroit and Ann Arbor, Michigan.

  4. All events, transactions or occurrences pertinent hereto took place in Detroit, Michigan, unless specifically alleged otherwise.

  5. This is an action brought under the Civil Rights Act of 1964, § 7; 42 U.S.C. § 2000e.

  6. This matter is otherwise properly before this Honorable Court.

1

STATEMENT OF FACTS
COUNT I

7. Paragraphs 1-6 are realleged and in corporated by reference as if fully set forth herein.

8. Plaintiff commenced her employment with the defendant agency on April 15, 2018.

9. By October 2018, Plaintiff became aware of and applied for the open position as a Worker's Compensation Program Manager. Once selected for this position, she worked under the supervision of Earl Lee.

10. Soon after Plaintiff began working under defendant Lee's supervision, Lee began doing or saying things which were sexually suggestive which Plaintiff attempted to discourage. They included, but were not limited to the following:

    a. On or about January 7, 2019, Plaintiff entered Lee's office, intending to speak with him about a matter she was working on. As she entered the room, Lee smiled and then began to laugh. When Plaintiff asked what was funny, defendant Lee responded by saying: "I want to ask you something, but I don't want to offend you". Whereupon Plaintiff said: "well don't ask!" and promptly walked out of the room.

    b. In April, 2019, defendant Lee summoned Plaintiff into his office and told her that he had told his fraternity ("frat") brothers that he was not married that he would make Plaintiff "his woman".

    c. On another occasion, also in April, 2019, Plaintiff was again summoned to defendant Lee's office, during which he began what

was ostensibly a discussion about something related to work, but interrupted the discussion by suddenly using his cell phone to take Plaintiff's picture. Startled by this conduct, Plaintiff asked why he had taken her picture. Lee responded that he had taken Plaintiff's picture so that he could show it to his "frat brothers".

Plaintiff demanded that Lee delete her picture, and promptly left the room.

d.   On or about June 1, 2019, defendant Lee, commenting on a man from another section of the office whom he had apparently seen visiting Plaintiff in her office, said "I see you have a new 'boo'". Plaintiff responded that she didn't have any "boo", and walked away.

11. Plaintiff was constantly and repeatedly subjected to defendant Lee's unwanted advances, inquires into her personal life, and sexually suggestive comments and conduct, similar to the aforementioned examples offered as illustrative, but not exhaustive. On each occasion Plaintiff, by her words and/or conduct attempted to make it clear to Lee that Lee's comments and conduct was unwelcome. However, Plaintiff's responses to Lee's conduct only seemed to cause him to become more aggressive in his behavior, as well as causing him to become retaliatory for rebuffing his suggestions.

12. During the summer of 2019, Lee entered Plaintiff's office, with the chief of the Human Resources section. When Lee and the woman entered Plaintiff's office they found that the man Lee had previously referred to as Plaintiff's "new boo" was present in the office. After a

short visit, Lee and the woman departed. However, later that day, Lee summoned the man who had been visiting the Plaintiff, telling him that he was not to visit Plaintiff's office again, nor should he be seen interacting in any way with the Plaintiff, implied threatening him if he did not heed the warning.

13. Defendant Lee began to frequently and unfairly criticize Plaintiff's work.

14. On one occasion, while Plaintiff was engaged in a training of others within the section, Lee came into the room, interrupted the session and demanded that Plaintiff step out into the hallway. When she did, Lee berated her and vociferously criticizing her training methods, though he did not, indeed could have sufficient information upon which to form any opinion, positive or negative, about that which he offered criticism.

15. Defendant Lee had an office within the department. The furniture in his office included a desk, a desk chair and two chairs for visitors to is office. The visitor's chairs were situated on the opposite side of Lee's desk from his personal desk chair. Ordinarily the visitors' chairs were turned toward Lee's desk such that people sitting in them would be facing Lee while he sat in his chair facing them from across the desk.

16. On or about September 27, 2019, Lee summoned Plaintiff into his office. Upon her arrived, she noticed that the chairs had been turned such that they almost faced each other, rather than Lee's desk as they usually did.

17. Lee asked Plaintiff to have a seat, and after she did, she was surprised when Lee sat in the other visitor's chair rather than behind his desk as he usually would.

18. While sitting in the visitor's chair, nearly facing Lee, she was asked a question which

caused her to turn in order to see a computer screen, situated to her side and rear. As she turned back, she saw Lee staring at her legs and inner thighs from under her dress. So shocked was she by Lee's conduct that she hastily left the room.

19. Plaintiff was so disturbed by Lee's conduct that she dreaded going to work, and took numerous sick days just to avoid being around him. She became physically ill at times and had considerable difficulty sleeping. When she did sleep, she often had nightmares about Lee, her work and the conduct Lee subjected her to.

20. After filing an administrative complaint about Lee's conduct, Plaintiff has opted out of that process so as to enable her to file the instant complaint.

21. As a direct and proximate result of Lee's sexual harassment Plaintiff has suffered, and/or continues to suffer.

    a. Extreme and severe mental and emotional distress.

    b. Lost compensable time

    c. Out of pocket costs

    d. Physical distress and illness

    e. Future medical expenses

## COUNT II

22. Paragraphs 1-21 are realleged and incorporated by reference as if fully set forth herein.

23. Plaintiff was subjected to intentional infliction of emotional distress.

WHEREFORE Plaintiff prays as follows:

    a. For judgment in her favor awarding actual damages

    b. Punitive and/or exemplary damages

      c. Cost of this suit

      d. Interest as provided by law

      e. Attorney Fees

/s/Ernest L. Jarrett
Ernest L. Jarrett (P29770)
Attorney for Plaintiff
24800 Denso Dr. Suite 255
Southfield, MI 48033
(313) 964-2002 (o)
eljlaw@yahoo.com

## JURY DEMAND

Plaintiff hereby demands trial by jury.

/s/Ernest L. Jarrett
Ernest L. Jarrett (P29770)
Attorney for Plaintiff
24800 Denso Dr. Suite 255
Southfield, MI 48033
(313) 964-2002 (o)
eljlaw@yahoo.com

Dated: February 5, 2022